UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAEZON ELLIS,

                 Plaintiff,

       -against-

NAICA HOUSING DEVELOPMENT FUND
COMPANY, INC.; JOHN DOE, Security on
staff; JOHN DOE, Staff

               Defendants.

24-CV-6683 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action invoking the Court's federal question jurisdiction, 28 U.S.C. § 1331. He sues NAICA Housing Development Fund Company, Inc., which appears to be a nonprofit agency engaged in homelessness prevention, and two unidentified employees. By order dated September 10, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* (IFP), that is, without prepayment of fees. For the reasons set forth in this order, the Court dismisses the action with 30 days' leave to replead.

### STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

## BACKGROUND

The following facts are drawn from the complaint.[1] Plaintiff alleges that his claims arose at a facility on Tremont Avenue and at a bus terminal on Grand Concourse Avenue, both in Bronx County. (ECF 1 at 5.) The events giving rise to Plaintiff's claims took place on June 2nd, 15th, and 30th, and August 3rd, 10th, and 21st, of an unspecified year.

Plaintiff alleges the following:

On the first incident at the facility where i got a busted lip and strained neck and shoulder injury; I was new to the facility and someone told me to come to them in a little bit because i was selling shirts and needed help selling them. a guy tells me to come to the room. One of the guys staying in the room starts eyeing me and then became the aggressor after what im doing in the rrom. i quickly left the room returning to mine where I then see a crowd stiring up by the door. security doesnt do anything, they convince me to come to the door and security wouldnt tell them to leave me alone or anything. i felt bullied, walked out the door to getting choked up and woke up on the fllor in a pile of blood. This is the first time I seen secuity not do anything.

(*Id.*)

Plaintiff further alleges the following:

Next incident. After they moved me into a new room the crowd in there was okay but one of the guys basically harrassed me in the room and got into a yelling at hisself he got into my face, when I yelled for staff no one was in the hallway.

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

> June 30th comes this morning i went to brush my teeth came back into the room
> to get dressed one of the staff members calls me a Faggot while im laying down
> on my phone. The same staff member who then proceeded to help me wash cloths
> but then doesnt finish them resulting in my cloths being moldy which pat me ir1
> discomfort. There has also been pack up of my locker that wasn't brought to my
> attention until i got back to the facility, there was loss of a full bag of clothes, a
> pair of shoes, and computer that was in my belongings that no one can find.
>
> After telling site director about the Cloths being moldy that same day August 10th
> i was headed to the subway while on the way there the same guy who has said
> discriminatory things in the past Confronts me about some things that his boss
> told him. Details about what she said to him were none but he was sure to leave
> me with a threat not to say anything else or itll be consequences. scared of being a
> whitsle blower i havent said anything

(Id.)

Plaintiff also describes an incident on August 21st of an unspecified year, in which

another resident told Plaintiff to leave his room, grabbed Plaintiff by the shirt, and showed

Plaintiff "a knife as if he was going to shiv" him. (*Id.* at 6.) Plaintiff states that "nothing was

done" and that "security should've been on staff to prevent the incident." (*Id.*)

Plaintiff brings this suit against NAICA Housing Development Fund Company, Inc.

("NAICA"), "John Doe Security" and "John Doe Staff." He invokes federal question

jurisdiction, characterizing his claims as "negligence of security resulting in long-lasting

injuries." (*Id.* at 2.) Plaintiff seeks damages.

## DISCUSSION

Plaintiff sues NAICA and its employees for three claims: (1) failure to protect him from

other residents, which Plaintiff characterizes as "negligen[t] security"; (2) the loss of his

property; and (3) discrimination, based on an employee calling Plaintiff "a faggot."

### A.    Claims against private parties

Because Plaintiff invokes the Court's federal question jurisdiction, the Court considers

whether he states a claim for a violation of his rights under the Constitution or federal law. To

state a claim for the violation of a right secured by the Constitution or laws of the United States, under 42 U.S.C. § 1983, a plaintiff must allege that the defendant is acting under the color of state law, or is a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). It appears from the fact that Defendant NAICA is an incorporated entity that it is a private, nongovernmental entity.

The activity of a nominally private entity may be considered state action for the purpose of Section 1983 liability: (1) when the entity acts using the coercive power of the State or is controlled by the State (the "compulsion test"); (2) when the entity willfully participates in joint activity with the State, or its functions are entwined with State policies (the "joint action" or "close nexus" test); or (3) when the State has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citation omitted). The fundamental question under each test is whether the private entity's challenged actions are "'fairly attributable'" to the State. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

In analyzing whether a private entity has acted as a state actor, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Id.* (internal quotation marks and citation omitted). Here, NAICA's challenged actions involve providing housing, which is not a public function because it is not the exclusive province of the state. *See, e.g.*, *Okon v. Appia*, No. 06-CV-6810 (CPS), 2008 WL 2245431, at *14 (E.D.N.Y. May 29, 2008); *George v. Pathways to Housing, Inc.*, No. 10-CV-9505 (ER), 2012 WL 2512964, at *4 (S.D.N.Y. June 29, 2012) ("It is well established that the provision of low-cost supportive housing is not a 'public function.'"). Moreover, neither

4

government funding nor government regulation suffices for a private entity to be deemed a state actor, *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Kohn*, 457 U.S. at 838, because the crucial issue is the relationship between the government and the challenged action taken by the private actor, *George*, 2012 WL 2512964, at *4, n.5. Because NAICA cannot be deemed a state actor in providing Plaintiff with temporary housing, Plaintiff does not state a claim under Section 1983 against Defendant NAICA or its employees.[2]

Even if NAICA and its employees could be deemed state actors, as set forth below, Plaintiff's allegations that Defendants did not protect him and lost his property do not state a claim arising under federal law.

### 1.    Failure to Protect

The United States Constitution does not require "the State to protect the life, liberty, and property of its citizens against invasion by private actors," nor does it confer an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Duhaney v. Winnebago Cnty. Dep't. of Soc. Servs.*, 489 U.S. 189, 195-96 (1986); *Gong v. Sarnoff*, No. 23-CV-0343 (LJL), 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024) ("It is settled that the State has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody." (internal quotation marks and citations omitted)). The Constitution does not impose a duty on defendants to protect Plaintiff from harm at the hands of private

---

[2] Plaintiff alleges that one defendant provides security services. Generally, private security guards hired by a business are not state actors under Section 1983. *See Bishop v. Toys "R" Us–NY LLC*, 414 F. Supp. 2d 385, 396 (S.D.N.Y. 2006). However, in some circumstances, a security guard may be liable under Section 1983, such as where a security guard is deputized as a "special patrolman" under the New York City Administrative Code. *See Rojas v. Alexander's Dep't Store, Inc*., 654 F. Supp. 856, 858 (E.D.N.Y. 1986) (relying on *Williams v. United States*, 341 U.S. 97, 99 (1951)). The Court therefore addresses below the substance of Plaintiff's claims.

individuals in the situation described in the complaint, where there are no allegations that Plaintiff was in custody. Thus, even if NAICA or its employees were state actors, there is no basis for treating Plaintiff's state law claims of negligence as claims arising under the Constitution or other federal law.

### 2.    Loss of property

Plaintiff's claim that his property was lost at NAICA also does not give rise to a federal claim. The Fourteenth Amendment prohibits the deprivation of property without due process of law. A government official's random and unauthorized act depriving an individual of property does not violate the right to procedural due process, however, if a meaningful post-deprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1986); *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Because the government cannot predict when a random and unauthorized deprivation of a person's property will occur, it cannot provide meaningful process before deprivation of the property interest; thus, due process is satisfied if state law provides an adequate post-deprivation remedy. *See Zinermon v. Burch*, 494 U.S. 113, 127-39 (1990); *Hudson*, 468 U.S. at 533.

When a plaintiff asserts a claim for loss of property, "the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts." *Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991). New York State law provides post-deprivation remedies to address property loss at the hands of government employees. *Moreno v. New York*, 69 N.Y.2d 432, 435 (1987) (describing alternative state remedies to recover seized property); *Boyle v. Kelley*, 42 N.Y.2d 88, 90-91 (1977) (property wrongfully seized is recoverable by a state replevin action or a state proceeding brought under Article 78 of the New York Civil Practice Law and Rules). Plaintiff's allegations that a NAICA employee engaged in random and unauthorized action, depriving him of property, thus does not state a

federal claim for a violation of his constitutional right to due process even if defendants qualified as state actors.

**B.    Fair Housing Act**

The Fair Housing Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).[3] Courts have held that the reach of this prohibition on discrimination "in the provision of services or facilities in connection therewith" goes beyond sales and rentals. *See Jenkins*, 643 F. Supp. 2d at 519 (holding that the "otherwise make unavailable" clause expanded the scope of the [FHA] to include actions other than refusal to rent or sell property" in the context of sex discrimination under Section 3604(a), but not for disability discrimination under Section 3604(f), because of "a crucial difference in the language of the two provisions"), *aff'd on other grounds*, 391 F. App'x 81 (2d Cir. 2010). Even if the Court assumes without deciding that the FHA governs sex discrimination in the services and facilities at NAICA's temporary or transitional shelter, Plaintiff's allegations that a staff member engaged in name calling are insufficient to state a claim on which relief can be granted.

"Courts in this Circuit have construed section 3604(b) of the FHA to prohibit the creation of a 'hostile environment' by individuals who have control or authority over the 'terms,

---

[3] It is an open question in the Second Circuit whether shelters or transitional housing qualify as dwellings as that term is defined in the FHA, 42 U.S.C. § 3602(b). *See Jenkins v. New York City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 517 (S.D.N.Y. 2009) (noting that "[t]he Second Circuit has not addressed whether a shelter offering free housing to the homeless falls under the Fair Housing Act" but the shelter at issue "could well fall within the definition of dwelling under the FHA"). The Court assumes, for purposes of this order, that the NAICA facility where Plaintiff was staying qualifies as a dwelling for purposes of the FHA.

conditions, or privileges of sale or rental of a dwelling,' [which is a claim] similar to the prohibition imposed by Title VII against the creation of a hostile work environment." *Spavone v. Transitional Servs. of New York Supportive Hous. Program (TSI)*, No. 16-CV-1219 (MKB), 2016 WL 2758269, at *6 (E.D.N.Y. May 12, 2016). "A plaintiff seeking to state a hostile housing environment claim must allege that (1) she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile [housing] environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) a basis exists for imputing the allegedly harassing conduct to the defendants. *Id.* at *7 (citations and quotation marks omitted).

A plaintiff bringing an FHA claim must also show a relationship between the discriminatory conduct and housing. *See New York by Abrams v. Merlino*, 694 F. Supp. 1101, 1104 (S.D.N.Y. 1988) ("[P]laintiffs, to succeed, must demonstrate . . . a relationship between the harassment and housing."); *Spavone*, 2016 WL 2758269, at *7 (dismissing FHA claim based on incidents of name calling because "Plaintiff provides no allegations that connect [Defendant's] alleged racial harassment to Plaintiff's housing conditions").

Here, Plaintiff alleges that on one occasion a staff person engaged in offensive name calling. Generally, one such incident is not sufficiently severe and pervasive to create a hostile environment. *See Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 278 (S.D.N.Y. 2019) ("For the conduct to constitute harassment such that it creates a hostile environment under the FHA, it must be pervasive and serve and not merely isolated of sporadic."); *Merlino*, 694 F. Supp. at 1104 ("[T]he plaintiffs, to succeed [on their FHA claim], must demonstrate severe and pervasive sexual harassment, not isolated or trivial instances of harassment"). To state a hostile environment claim under the FHA, the discriminatory conduct generally must consist of "more

than a few isolated incidents." *Anonymous v. Goddard Riverside Cmty. Ctr., Inc.*, No. 96-CV-9198 (SAS), 1997 WL 475165, at *4 (S.D.N.Y. July 18, 1997) (citing *Snell v. Suffolk Cnty.*, 782 F.2d 1094, 1103 (2d Cir. 1986)). Thus, although the Court does not condone such unprofessional behavior, Plaintiff's allegations are insufficient to state a claim for sex discrimination in violation of the FHA, where his claim is based on a single remark and there is no allegation of an adverse effect on his housing. Any FHA claim that Plaintiff is asserting must therefore be dismissed for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.    State law claims

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

## D.    Leave to amend

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because it is unclear whether

9

Plaintiff may be able to allege additional facts to state a valid federal claim under the standards set forth above, the Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims.

If Plaintiff chooses not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment.

**E.    Referral to SDNY Federal Pro Se Legal Assistance Project**

The City Bar Justice Center (CBJC) operates the SDNY Federal Pro Se Legal Assistance Project to assist self-represented parties with civil cases in this court. Appointments can be scheduled by phone (212-382-4794), email (fedprosdny@nycbar.org), or by completing the City Bar Justice Center's intake form. A flyer with details is attached.[4]

**CONCLUSION**

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed for the reasons set forth in this order, with 30 days' leave to replead.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to hold this matter open on the docket until judgment is entered.

Dated:    March 13, 2025
          New York, New York

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge

---

[4] The CBJC is a private organization that it not part of the court, and the CBJC's SDNY Federal Pro Se Legal Assistance Project cannot accept filings on behalf of the court.

# FEDERAL PRO SE LEGAL ASSISTANCE PROJECT
in the Southern District of New York (SDNY)



## ABOUT THE PROJECT

The Federal Pro Se Legal Assistance Project (Fed Pro) provides limited assistance to self-represented litigants (plaintiffs and defendants) with cases involving civil legal matters in the United States District Court for the Southern District of New York (SDNY).

## HOW TO SCHEDULE AN APPOINTMENT

To schedule an appointment for assistance with City Bar Justice Center's Fed Pro project, you must first complete our online Intake Form.



- Our online Intake Form is accessible via one of these methods:
  - Scan the QR code to the right.
  - Go to bit.ly/prosesdny
- Once on the City Bar Justice Center Federal Pro Se Legal Assistance page, scroll down to "**SDNY**" and then click "**APPLY FOR HELP**" to be taken to the Intake Form.
- When the Intake Form asks: "How can we help you", please select "**Federal Court Case**" from the drop-down menu. The Fed Pro SDNY office will receive your application ONLY if you select "federal court case." If you select anything else, you will need to re-complete your application.

Once you complete the form, someone will contact you, usually within five business days, to schedule an appointment. If you are not able to complete the Intake Form, please call **(212) 382-4794**, leave a detailed message, and wait for us to call you back, typically within five business days.

## HOW WE HELP

**While we cannot provide full representation,** we can assist litigants by providing limited-scope services such as:


**Counseling** about potential federal claims prior to filing suit


Consulting on **discovery** matters


**Interpreting and explaining** federal law and procedure


Assisting with the **settlement** process (including **mediation**)


**Reviewing drafted pleadings** and correspondence with the Court